Elmore Real Estate Improvement Company, Appellant, v. Norman L. Olson et al., Appellees.

Gen. No. 43,656.

476

Opinion filed November 19, 1947. Rehearing denied December 23, 1947. Released for publication December 24, 1947.

HERSHENSON & HERSHENSON and JAMES B. McKEON, all of Chicago, for appellant.

ASHCRAFT & ASHCRAFT, of Chicago, for appellees; ALAN E. ASHCRAFT, JR., CARROLL J. LORD and RUFUS D. BEACH, all of Chicago, of counsel.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

This is an action for specific performance of a real estate contract and, in the alternative, to recover damages for breach of the contract. On defendants' motion, the third amended complaint was stricken and the cause dismissed for want of equity.

The third amended complaint alleges in substance that on April 21, 1939, defendant Norman L. Olson, as trustee, was the owner of certain real estate in Lake County, Illinois, known as "Biltmore Country Estates" and "Signal Hill Subdivision"; that defendant Clifford M. Leonard is the owner of all the stock of defendant Leonard Construction Company, a corporation; and that he is the sole beneficiary named in a trust agreement dated June 12, 1926, under the terms of which Olson, trustee, on April 21, 1939, entered into the contract with plaintiff upon which the present suit is based. That the contract between Olson, as trustee, and plaintiff provided among other things that plaintiff was to sell within five years commencing June 15, 1939, sufficient lots and tracts in Biltmore Country Estates subdivision so that the proceeds of the sales of the lots and tracts would net defendants the sum of $156,000 and sell a sufficient number of lots and tracts in the Signal Hill subdivision during the same period of time to net defendants $40,000; that the respective sums, aggregating $196,000, were to be accepted by defendants in full of all their right, title and interest in and to the foregoing subdivisions; that plaintiff was to sell at least $60,000 worth of lots each year during the period of the contract and in the event

it failed to do so defendants could cancel the contract upon 60 days' notice in writing; that plaintiff was to retain 40 per cent of the agreed purchase price of lots or tracts sold by it in the Biltmore subdivision, payable solely out of the first proceeds of such sales, and in like manner 25 per cent of all the sales of lots or tracts in the Signal Hill subdivision; and that upon the payment of $196,000 to defendant plaintiff should have, as added compensation, quitclaim deeds to all lots or tracts not theretofore conveyed to purchasers and an assignment to it of all purchase contracts and moneys due thereunder.

The amended complaint further alleges that during the year of the contract ending June 15, 1940, plaintiff sold lots and tracts in the total sum of $84,000 at prices fixed by defendants; that during the year ending June 15, 1941, plaintiff sold lots and tracts aggregating $54,675; that during the third year ending June 15, 1942, plaintiff sold lots aggregating $46,920; that defendants waived the condition in the contract which required plaintiff to sell at least $60,000 worth of lots during the years 1941 and 1942; that during the fourth year of the contract ending June 15, 1943, plaintiff sold lots and tracts aggregating $74,599 at prices fixed by defendants; that during the four-year period ending June 15, 1943, the total sales aggregated $260,194 and that less than $4,000 of the contracts have been canceled by reason of default of payment; that on May 28, 1943, Olson, trustee, sent a letter to plaintiff, the pertinent portions of which read as follows: "I elect . . . to terminate, cancel and make void said agreement sixty days from the date hereof for failure to make sales as provided in said clause 22nd"; "You defaulted in sales for the year ending June 15, 1941 and again for the year ending June 15, 1942, and it does not appear that you will be able to make sufficient bona fide sales this year based on sales to date."; that the defendants received in cash $109,546.63 and the bal-

ance due on contracts amounting to $40,923.22; and that plaintiff is ready, willing and able on an accounting to pay to defendants whatever amount is due between the sum actually received by defendants and the sum provided in the contract of $196,000.

The third amended complaint prays that defendants may be decreed to perform specifically the agreements upon payment to defendants of any balance found to be due them from plaintiff; that defendants be directed to assign and deliver to plaintiff all interest of defendant trustee in any purchase contracts and all moneys due thereunder and to convey certain lots and tracts; and that in the alternative defendants may be decreed to pay damages to plaintiff.

Defendants maintain that the contract here involved cannot be specifically enforced, for lack of mutuality. *Barker v. Hauberg,* 325 Ill. 538; *Wurn v. Berkson,* 305 Ill. 231; *Ulrey v. Keith,* 237 Ill. 284, and other cases are relied on.

Plaintiff insists that it has fully performed the contract by alleging its readiness and willingness to pay the balance due defendants under the terms of the contract.

Plaintiff's offer by its pleadings to pay defendants the remainder due under the contract is a sufficient tender. (*Neidhart v. Frank,* 325 Ill. 596.) The fact that the tender was first made in the third amended complaint, which was filed after the contract had expired by its terms, is immaterial since the last amendment relates back to the time of the filing of the original bill. (*Charles A. Hohmeier Lumber Co. v. Knight,* 350 Ill. 248.) Therefore it follows that in considering defendants' motion to strike we must regard the contract as having been fully performed with respect to the balance due on the contract. The general rule, that a contract to be specifically enforced must be mutual, has no application in the instant case where the pleadings show that it has been fully performed.

(*Oswald v. Nehls*, 233 Ill. 438; *Ellis Electrical Laboratory Sales Corp. v. Ellis*, 269 Ill. App. 417; Williston on Contracts (Rev. Ed., 1937) vol. 5, par. 1440, p. 4022.)

In its amended complaint plaintiff admits that it failed to make sales to the extent of $60,000 for the years ending June 15, 1941 and 1942, but alleges that defendants waived the right to cancel by continuing thereafter to treat the contract as being in full force and effect in accepting and executing contracts obtained by plaintiff from purchasers during these years and the following year 1943. The foregoing allegations state, in our view, sufficient grounds for a waiver of those provisions of the contract which require minimum sales of $60,000 for the years 1941 and 1942. Hence plaintiff's alleged default in sales for the years 1941 and 1942 would not furnish valid grounds for terminating the contract. (*Thayer v. Wilmington Star Min. Co. of Coal City*, 105 Ill. 540; *Illinois Live Stock Ins. Co. v. Baker*, 153 Ill. 240.) A waiver once made is irrevocable and cannot be revived. (*Illinois Live Stock Ins. Co. v. Baker*, 153 Ill. 240; *United States Fidelity & Guaranty Co. v. Miller*, 237 Ky. 43, 76 A. L. R. 12, 34 S. W. (2d) 938.)

With respect to the year ending June 15, 1943, the amended complaint shows aggregate sales in excess of the minimum required by the contract.

Defendants argue that twenty-three purchase agreements made during the year 1943 and aggregating $37,900 are not in proper form and that they should have been attached to the amended complaint so that the court might determine their validity as a matter of law. Plaintiff says that the persons named in these agreements were bona fide purchasers, and that it used the forms prepared and furnished by defendants. The present suit is based upon a contract which is attached to the amended complaint, and not upon the purchase agreements. We think that the allegations of the amended complaint with the contract

attached "reasonably inform" defendants of the nature of plaintiff's claim, in conformity with paragraph 2, section 42 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 166, subpar. (2); Jones Ill. Stats. Ann. 104.042, subpar. (2)]. (*Monroe College of Optometry v. Goodman,* 332 Ill. App. 78.)

■■ According to the amended complaint defendant Clifford M. Leonard is the owner of all the outstanding shares of defendant Leonard Construction Company and the sole beneficiary of the trust agreement dated June 11, 1926; that Olson, as trustee, at the direction and with full knowledge and consent of defendants Clifford M. Leonard and Leonard Construction Company, entered into the agreement involved in the case at bar, and that plaintiff remitted all moneys received by it on the sale of lots or tracts under the contract in question to defendants Clifford M. Leonard and Leonard Construction Company at the request of defendant trustee Olson. Under these circumstances we think that the contract sued on is binding on the trust estate. Where, as here, defendant trustee Olson purports to bind the trust estate and not himself personally, plaintiff is not "left between two stools with no remedy at all." (Scott on Trusts, vol. 2, par. 263.3, p. 1484.) From the allegations of the amended complaint we must assume that the trust estate benefited to the extent of the payments made by plaintiff to defendants, and that the trustee did not exceed his authority in making the contract.

■ Defendants insist that Clifford M. Leonard is neither a proper nor a necessary party to the suit. Defendants' position is untenable. In *Peoples Bank & Trust Co. of Rockford v. Gregory,* 347 Ill. 397, the court held that

"The trustee is a necessary party because he holds the legal title. The beneficiary is a necessary party because he has the equitable and ultimate interest to be affected by the decree."

Defendants contend that the plaintiff having elected to treat the contract as continuing in full force and effect may not at the same time maintain an action for damages upon the inconsistent theory that the contract was rescinded. Plaintiff asserts that if the court after hearing the evidence should determine that specific performance is not warranted then plaintiff would be without remedy unless awarded damages. The remedies prayed for in the third amended complaint are alternative but not inconsistent. As we read it, neither remedy seeks a disaffirmance of the contract. In *Fleming v. Dillon*, 370 Ill. 325, at page 331, the court said:

"If coexistent remedies are consistent with each other, a party may adopt all or select any one which he thinks best suited for the ends sought, and only the satisfaction of the claim in one case constitutes a bar to the other."

To the same effect is *Marcus v. National Council of Knights & Ladies of Security*, 127 Minn. 196. Since the amended complaint contains a prayer for "such other and further relief in the premises as the court shall deem just and proper," the court could enforce purely legal rights in the event it found no grounds for equitable jurisdiction. And where no jury is employed, legal and equitable issues may be tried together. (*Westerfield v. Redmer*, 310 Ill. App. 246.)

Defendants have called our attention to the recent case of *Olson v. Eulette and Elmore Real Estate Improvement Company*, 332 Ill. App. 178, determined by the Appellate Court for the Second District of Illinois. Defendants urge that the opinion in the case last cited disposes of plaintiff's contentions in the instant case that it possesses an agency coupled with an interest and that plaintiff has the right to purchase the real estate which is the subject matter of the contract by tendering the difference between the sums paid to de-

fendants by plaintiff and $196,000. From a reading of the opinion it appears that the sole issue in that case was whether a recorded real estate contract between Trustee Olson and Defendant Eulette was a fraud upon the plaintiff trustee.

In the instant case the plaintiff proceeds upon the theory of fact that the contract is no longer executory, whereas in the case last cited there was no evidence that plaintiff had received the total sum required by the contract, nor does it appear that any tender was made thereof. In short, plaintiff here says that it complied with all the conditions of the contract except for the years 1941 and 1942, when its sales fell below the $60,000 minimum; that this was subsequently waived by defendants; that defendants wrongfully terminated the contract before its expiration; and that plaintiff stands ready, willing and able to pay defendants the balance, if any, found due them upon an accounting. We think the facts alleged in the amended complaint in the instant case are readily distinguishable from those disclosed in the opinion in the foregoing case, and, therefore, it is not decisive of any of the issues raised here.

In our opinion the third amended complaint states good causes of action and, for the reasons assigned, the order sustaining defendants' motion to strike and dismissing the complaint for want of equity is reversed and the cause is remanded with directions to the trial court to deny the motion to strike, and for further proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*

KILEY and BURKE, JJ., concur.